## NEWTON et al. v. INDEPENDENT EX-PLORATION CO. et al.

### No. 1680.

Court of Appeal of Louisiana.  First Circuit.

Jan. 12, 1937.

Pujo, Bell & Hardin, of Lake Charles, for appellants.

Griffin T. Hawkins, of Lake Charles, for appellee.

LE BLANC, Judge.

An automobile accident which occurred at about 7:30 o'clock of the evening of March 28, 1935, on Highway No. 90, known as the Old Spanish Trail, about one mile west of the town of Vinton, in Calcasieu parish, gave rise to this and two other damage suits. The automobile involved was a Chevrolet sedan belonging to, and being driven at the time by, Oscar J. Bean. It was traveling west and collided with a truck belonging to the Independent Exploration Company, which was going in the same direction ahead of it, the truck being driven at the time by Hailey Aycock, who, it is not disputed, was at the moment performing services arising out of and incidental to his employment by his master. The Employers Casualty Company, a foreign insurance Company domiciled in the state of Texas, is made a codefendant in each suit, as the public liability insurer of the defendant Independent Exploration Company.

The Bean car, as it will be hereinafter referred to, was occupied by Mr. Bean himself, who as already stated was driving; his mother, who sat on the front seat next to him; his wife, Mrs. Burres Bean; Mr. Dennis H. Newton and his wife, Mrs. Dennis H. (Bonnie) Newton. The last three occupied the rear seat.

As a result of the collision, all three ladies in the car sustained more or less severe injuries. The men suffered none of any consequence, but they both, as has Mr. J. K. Bean, husband of Mrs. Miriam Bean, have joined their respective wives as plaintiffs, in each suit, seeking to recover certain expenses incurred by them as a result of the accident.

The present suit is that of Mrs. Dennis H. (Bonnie) Newton, who claims to have suffered a serious laceration of the scalp and multiple lacerations of the face, resulting in pronounced disfigurement, a laceration of the right wrist, and rupture of the tympanic membrane of her left ear. For all of these injuries as well as for traumatic shock, for body bruises, and for pain and suffering, she seeks to recover of both defendants, in solido, the sum of $2,871. Her husband, Dennis H. Newton, joins her as plaintiff and claims to have expended various sums for doctors' and other medical services aggregating $79, for which he also asks judgment.

Mrs. Burres Bean, wife of Oscar J. Bean, claims that her left shoulder muscles were cut into to such extent as to require twenty-two stitches; that she was bruised all over the body, both her knees were badly skinned, and she suffered great pain and shock—for all of which she asks to recover, in a separate suit, the sum of $2,650. Her husband, Oscar J. Bean, as party plaintiff in the same suit, claims to have incurred

expenses amounting to $68.50 in having his wife attended to, for which he also asks judgment as does his wife, against both defendants, in solido. In addition, he claims that it cost him $245 to have had his damaged car repaired, and this amount he also seeks to recover in the same suit.

Mrs. J. K. Miriam Bean, joined by her husband, J. K. Bean, filed the third suit against both defendants, in which she prays for judgment, in solido, for her injuries which are alleged to have been abraisions and contusions of the chest and two fractured ribs, a strained back, an injury in the left temple, and a bruised left eye, and also injuries to her legs. For these, together with the pain and suffering and the shock incidental thereto, she asks the sum of $2,875. Her husband claims to have incurred obligations amounting to $75 in the treatment of his wife, which sum he prays judgment for.

The allegations of the petitions in all three suits, setting out the negligence of the driver of the defendant truck, are the same. In substance they amount to the charge that he paid no heed whatever to the warning given him of the approach of the Bean car which was following the truck and that as the car was about to pass ahead of it on the left, he suddenly, and without having given any indication or sign whatsoever of his intention to do so, turned to his left, placing the truck right in the path of the automobile. It is alleged that Mr. Bean did all that he could to avoid a collision but to no avail. The negligence of the truck driver, it is averred, was the sole and proximate cause of the accident.

The defendants filed a joint answer in which they deny that the driver of the truck was about to execute a left-hand turn as alleged by plaintiffs, and deny generally that he was negligent in any respect. As an affirmative defense they allege that the accident was caused solely by the recklessness, negligence, and carelessness of the driver of the sedan automobile, Oscar J. Bean, who was driving at an excessive rate of speed and heedlessly ran into the rear of the truck. Further, it is averred that Mr. Bean had been drinking heavily just prior to the accident, that he was intoxicated, and this, to the knowledge of the occupants of the automobile, who therefore were guilty of negligence of riding in the car with him in that condition.

The three suits were consolidated for the purpose of taking the testimony of all parties involved in the accident and other witnesses who testified to facts concerning the same. The testimony of the doctors, relating to the injuries of the respective claimants, all of which was taken by deposition, was filed in each separate suit. The district judge filed written reasons for judgment in the record in this case and rendered separate judgments in each, in favor of the plaintiffs, for a lesser amount in each case, however, than had been demanded, and both defendants have appealed.

We will discuss the testimony regarding the accident and the liability vel non of the defendants, in this case, and, as we have concluded, as did the trial judge, that the defendants are liable, we will pass on the quantum in each case separately and so enter the decree in each.

All the parties who occupied the Bean car at the time of the accident were residents of Kirbyville, Jasper county, Tex. Mr. Bean and Mr. Newton both work for the Texas Pipe Line Company. They both had their vacation at the same time and decided to spend part of it by taking an automobile trip, with their wives and Mr. Bean's mother, to New Orleans. They spent a few days there, stopping at a tourist camp, where they did their own cooking.

They left New Orleans on the morning of March 28, 1935, crossing the Mississippi river at 8 o'clock, and reached Morgan City at about noon and stopped there for dinner or lunch. They then drove on to New Iberia and there decided they would visit the salt mines a few miles away. When they reached the mines, they found out that they were closed so they resumed their journey west. Arriving at Lake Charles, they went to the home of relatives of some of the parties, intending to visit them, but found that they were out, so again continued on their journey. It was not yet dark when they left Lake Charles, but evidently it was when they reached Vinton, because they all refer to the fact that Mr. Bean, the driver, slowed down on observing the traffic signal light at the intersection of the highway with the main street running through that town. They all seem to think that it was about 7:30 when the accident happened, and as Aycock, the driver of the truck, also fixes it at that time, we think that can be said to be when it occurred.

We have detailed the movements of the party during that day to show that there seemed to be nothing to press them, and

that according to the time it took them to cover the mileage they did, they apparently were not traveling at any reckless rate of speed. Some of them testify that just before the accident they were going at about forty miles per hour, which, in view of the straight road and light amount of traffic at the time, was reasonable and safe.

Mr. Bean, who was driving the car, was, in our opinion, in better position than any other to see and know what happened when the accident took place. He says that he could see the truck ahead of him as he gained ground over it, and that when he was within seventy-five or one hundred feet of it, he sounded the horn of his car to warn the driver of his approach and intention to pass ahead. He then started to pull his car to the left of the road getting ready to pass the truck, but when he reached a point thirty to forty feet from it, it suddenly turned to the left. He applied his brakes and turned his car also to the left in an effort to avoid the blow, but despite such effort, the truck struck his car on the rear end, right side, turning it over, and as it turned over it rolled into a ditch on the south side of the road. He testified positively that the driver of the truck did not extend his left hand out to the side of the truck, nor did he give any other sign or warning that he intended to make a left-hand turn in the highway.

It is unnecessary to go into any minute recital of the testimony of the other occupants of the car. Suffice it to say that they all more or less gave the same account of how the accident happened. Some frankly admit that they were not in as good position as was the driver to observe all that took place, but on the important points, they are all in agreement.

The physical facts, such as were shown to exist, corroborate the testimony of the plaintiffs. Photographs of the Bean car exhibited in the record show clearly that it received a pronounced blow on the rear right fender, where it joins the running board, and the left view shows what can readily be taken to be the effects of scratches and other marks from it having rolled over when it fell into the ditch. Mr. W. R. Atkins, member of the Louisiana highway patrol who investigated the accident officially, testified that he saw marks on the pavement which were made by friction of rubber tires on a car when the brakes are suddenly applied. These marks left the pavement on the left-hand or south side probably thirty feet from a private driveway leading into the highway on the south side, which is the point at which Mr. Bean testified he swerved his car to the left in an effort to pass around the truck. The turf on the south shoulder of the pavement from that point to a distance of approximately thirty feet west beyond the private driveway was torn by the wheels of the car which came to a rest at that point in the ditch. There is nothing in the record which contradicts these facts.

When we come to consider the defendant's side of the controversy, we find in the first place that the allegation in their answer, to the effect that the driver of the Bean car negligently ran into the rear of the truck, is not only not supported by any kind of testimony, but on the contrary, Aycock, the driver of the car, and B. V. Robinson, who was riding with him, both say that the blow, which was a glancing one, was altogether on the left-hand side of the truck from the rear fender, along the running board, up to the front fender and hub cap of the front wheel. Both these witnesses testify that the truck had slowed down on the north or right-hand side of the paved portion of the highway, and that it was hit when about twenty to twenty-five feet from the private driveway in which they intended to turn. They can hardly expect us to accept their statement to that effect in view of the allegations of the answer, which no doubt were made on information supplied by them as they apparently were the only two present besides the occupants of the Bean car, and also in the face of the overwhelming testimony of the other witnesses and the physical facts referred to. They both say that they saw the Bean car approaching from the rear but did not hear it give any signal of its intention to pass ahead of them. Their mere seeing it, however, was sufficient, as they intended to make this left-hand turn, to warn them of their duty to keep to the right of the road and, if necessary, to stop in order to let it go by. That it was their intention to make the left-hand turn is not disputed, as it was shown that young Aycock was at the time living at the home of Mr. Amar Vincent to which the private driveway led, and we are satisfied from the testimony that he was already well on his way across the paved portion of the highway when he found himself faced with the presence of the Bean car on the road.

The charge that Mr. Bean was intoxicated at the time was fully disproved. He and the others in the car with him freely admit that he and Mr. Newton had taken two or three drinks during the day out of a bottle of whisky found in his car, but the last of these was when they left New Iberia some three or four hours before the accident occurred.

On the question of the liability of these defendants on account of the negligence of the driver of the truck being the sole and proximate cause of the accident, we find no difficulty whatever in agreeing with the learned district judge, and it now remains for us to discuss the quantum of damages in each case.

In this, the suit of Mrs. Dennis H. (Bonnie) Newton, the demand, as already stated, was for $2,875 for her personal injuries and $79 for expenses incurred by her husband in her treatment. The district judge awarded her $2,100 and her husband $56.33. An answer to the appeal has been filed on her behalf, but not on behalf of her husband, so we take it that he is satisfied with the amount of the award made to him.

Counsel for the defendants complain of the excessiveness of the award to Mrs. Newton but give no special reason why it should be reduced. Defendants did not seem to question the nature and extent of her injuries except by denial in their answer. They produced no medical testimony on their side of the case. We have carefully gone over the testimony of the doctors who testified in her behalf and find that the district judge has correctly summarized her condition from that testimony as well as from his personal observation. Her more serious injuries consisted of a cut artery over her left eyebrow about two inches long, which left a marked scar; two separate small cuts on her left cheek which also left scars; several scalp wounds and a rupture of the tympanic membrane of her left ear which has affected her hearing to some slight degree. Mrs. Newton was at the time of the trial 25 years old. As stated by the district judge, she, like all women, especially of her age, would be, is very sensitive about her disfigurement. She suffered considerable pain and still consults a physician complaining of pain in her frontal sinuses and left ear. In the opinion of one of the X-ray experts who testified, the injury over the left eye has caused a thickening of the bony struc-ture on that side of her face and he considers this trouble as a permanent one.

Whilst the award of the district judge may be said to be liberal, we are not prepared to say that it is excessive in her case, and for that reason it will be sustained.

The judgment in this case is therefore affirmed.